**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **Criminal No. 22-130** |
| **JOVANNY VAZQUEZ** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by its undersigned attorneys, Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and Robert E. Eckert, Assistant United States Attorney for the district, respectfully requests that this Court impose a sentence below the advisory guideline range of 262 to 327 months' incarceration. For the reasons described below, the government believes that a sentence of imprisonment below the advisory guideline range is warranted given the defendant's conduct, his criminal record, and other sentencing factors discussed below. In support thereof, the government represents as follows.

## I. INTRODUCTION

On February 7, 2022, the defendant was arrested based on a criminal complaint charging him with firearms and narcotics offenses. On April 20, 2022, a grand jury sitting in the Eastern District of Pennsylvania returned a three-count Indictment charging the defendant with possession of a firearm by felon, in violation of 18 U.S.C. § 922(g)(1), (Count One), one count of possession of 28 grams or more of cocaine base ("crack") and a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), (b)(1)(C), (Count Two), and one count of the possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), (Count Three). On June 7, 2024, the defendant entered a guilty plea to Count One, a lesser included offense of Count Two, that is

possession of a detectable amount of cocaine base ("crack"), and a mixture and substance containing a detectable amounts of fentanyl, and Count Three of the Indictment. A sentencing hearing is scheduled for July 10, 2024, at 1:00 p.m.

## II. SENTENCING PROCEDURE

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in United States v. Booker, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-Booker case law, which continues to have advisory force.
>
> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing United States v. King, 454 F.3d 187, 194, 196 (3d Cir. 2006); United States v. Cooper, 437 F.3d 324, 329-30 (3d Cir. 2006)).

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the § 3553(a) factors, as well as other factors that support the recommended sentence in this case.

## III. MAXIMUM PENALTIES

The maximum punishments that the defendant faces on the counts to which he pled guilty is as follows:

**Count One**: The maximum penalty for a violation of Title 18, United States Code,

Section 922(g)(1) (felon in possession of a firearm) is 10 years' imprisonment, 3 years' supervised release, a fine of up to $250,000, and $100 special assessment.

**Count Two**: The maximum penalty for a violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), (possession with the intent to distribute a mixture and substance containing a detectable amount of cocaine base ("crack"), and a mixture and substance containing a detectable amounts of fentanyl) is 20 years' imprisonment, a mandatory minimum three years' supervised release up to lifetime supervised release, a $1,000,000 fine, and a $100 special assessment.

**Count Three**: The maximum penalty for a violation of Title 18, United States Code, Section 924(c)(1)(A)(i) (possession of a firearm in furtherance of a drug trafficking crime), lifetime imprisonment, a mandatory minimum five years' imprisonment to run consecutive to any other sentence of imprisonment imposed, a five-year period of supervised release, a $250,000 fine, and a $100 special assessment.

**Total Maximum and Mandatory Minimum Sentence**: lifetime imprisonment, five years' mandatory minimum imprisonment, a mandatory minimum three years' supervised release up to lifetime supervised release, $1,500,000 fine, and a $300 special assessment. Forfeiture of all proceeds from offense and all facilitating property also may be ordered.

## IV. SENTENCING GUIDELINES CALCULATIONS

The government agrees with the sentencing guideline calculations of the Probation Department, as reflected in the Presentence Report. These calculations establish that the defendant is a career offender based on his two prior convictions for felony drug offenses within the previous 15 years. USSG § 4B1.1(b)(3); PSR ¶ 29. Because the maximum sentence on

Count Two is 20 years, the offense level is a 32. PSR ¶ 29. Because Count One is a specific offense characteristic of Count Two, those counts group. PSR ¶ 21. Thus, the combined offense level is 32 and after three levels are subtracted for acceptance of responsibility, the total offense level is 29. PSR ¶ 32.

The defendant has two prior convictions for possession with the intent to deliver a controlled substance in Philadelphia County (2013 and 2017). PSR ¶ 34-35. In the first case, he was initially sentenced to five years' probation however upon his conviction for the same offense in 2017, he was re-sentenced to 6 to 23 months' incarceration. In the second case, the defendant was sentenced to 11.5 to 23 months' incarceration. He receives three criminal history points for each offense, for a total of six criminal history points. However, because the defendant is a career offender, he is automatically a Category VI offender. USSG § 4B1.1(b); PSR ¶ 39. The guideline range for Counts One and Two, based on an offense level of 29 and a criminal history category VI is 188-235 months. PSR ¶ 72.

The defendant's conviction on Count Three requires a 60 month consecutive term of imprisonment, making the effective guideline range 211-248 months. PSR ¶ 72. Here, however the defendant is a career offender, thus under USSG 4B1.1(c)(3), his guideline range is automatically 262 to 327 months. PSR ¶ 72.

## V. ANALYSIS OF THE 3553(a) FACTORS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 128 S. Ct. 586, 596 (2007). Thus, the Sentencing Guidelines remain an

indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[1]

1. Nature and Circumstances of the Offenses

In 2018, Philadelphia Police (PPD) executed a search warrant on Jovanny VAZQUEZ's house. Police recovered multiple firearms as well as narcotics at the property, and VAZQUEZ

[1] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" United States v. Dragon, 471 F.3d 501, 506 (3d Cir. 2006) (quoting United States v. Navedo-Concepcion, 450 F.3d 54, 58 (1st Cir. 2006)).

was charged locally with these violations. In January of 2022, there was an active bench warrant for VAZQUEZ arising from this case. As part of a separate investigation, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) agents obtained a state seizure warrant for electronic devices belonging to VAZQUEZ as well as a body warrant for 431 E. Sanger Street in Philadelphia. They also obtained, through service of process to Instagram, the IP address associated with VAZQUEZ's account, which turned out to be a Comcast IP address.

On January 5, 2022, the United States Marshalls Service (USMS) Fugitive Task Force attempted to locate VAZQUEZ at 431 E. Sanger Street. That morning, law enforcement personnel observed VAZQUEZ come to the front door of the apartment building, put up a sign for Amazon or some type of package delivery service, and then went back inside. Later that day, the USMS fugitive task force assembled at VAZQUEZ's house in preparation to arrest him.

While outside, Deputy Marshalls observed VAZQUEZ exit an apartment building and attempt to flee up the stairs. Once Marshalls observed this, they breached the door and entered the building. VAZQUEZ was taken into custody on the outstanding fugitive warrant in the hallway one floor above his apartment. Marshalls entered VAZQUEZ's apartment, conducted a protective sweep, and observed narcotics in plain view. Meanwhile ATF and Pennsylvania Office of the Attorney General personnel who were on scene with the Marshalls explained to VAZQUEZ that they possessed a valid warrant to search for electronic devices and asked him if there as anything in there that could harm them. VAZQUEZ told ATF that he had "dynamite," heroin, and a gun in his residence in a bag that also contained the ashes of his deceased child. VAZQUEZ requested that the officers seize the gun and drugs but not disturb the ashes of his deceased child. Officers then allowed VAZQUEZ to obtain shoes and clothing from the

apartment and upon his doing so, PPD officers transported him to ATF Philadelphia where he was interviewed.

Based on the observation of the narcotics as well as VAZQUEZ's statements, agents obtained an additional search warrant for drugs and firearms from VAZQUEZ's residence. Based on this search warrant, ATF recovered the following:

1) a Glock 9mm semiautomatic pistol, loaded with 14 rounds, and one in the chamber – recovered in a bag hanging from the doorknob of closet door in living room, 162 grams of crack cocaine, approximately 26 grams of fentanyl;
2) 58.77 grams of marijuana;
3) New/unused narcotics packaging material, and two digital scales;
4) Loose ammunition;
5) Two additional magazines, one loaded with 18 rounds, the other unloaded;
6) $4,828 United States currency; and
7) Three M-1000 explosive devices.

Agents then interviewed VAZQUEZ and he agreed, via a written document to waive his Miranda rights. In a video-taped statement, he acknowledged that he lived at 431 E. Sanger Street, Apartment B; that he is a previously convicted felon and cannot legally possess a firearm; that the firearm is his; and that he packages and sells narcotics. Specifically, he stated that he packages the crack cocaine on behalf of his supplier and receives payment solely for packaging those drugs. With regard to the fentanyl, he purchased it and was planning on selling it in bundles to customers.

2. <u>History and Characteristics of the Defendant</u>

The defendant has two prior criminal convictions, both for possession with the intent to deliver a controlled substance in Philadelphia County. On September 19, 2012, the defendant was arrested in possession of 16 grams of marijuana and three grams of PCP. PSR ¶ 34. He later plead guilty and was sentenced to five years' probation. Then, on February 9, 2017, the

defendant was arrested and charged with possessing 4.8 grams of heroin with the intent to deliver. The defendant plead guilty in that case and was sentenced to 11.5 to 23 months incarceration. PSR ¶ 35. This also violated the conditions of his parole and he was re-sentenced in the first case to 6-23 months imprisonment. The defendant later absconded from Philadelphia County probation and a bench warrant was issued for his arrest on November 16, 2018. PSR ¶ 35. This bench warrant remained active until his arrest in this case by ATF on January 5, 2022.

3. Personal Background

The defendant had been previously diagnosed with attention deficit hyperactivity disorder, schizophrenia, post-traumatic stress disorder (PTSD), anxiety, and depression. PSR ¶ 59. The defendant reported a history of substance abuse involving marijuana and PCP, however he stated that he has not used drugs since 2022. PSR ¶ 62, 64. The defendant reported that he received Social Security Disability Insurance due to his mental health diagnosis. PSR ¶ 66. The defendant obtained his high school equivalency diploma while in federal custody on February 2, 2024. PSR ¶ 65.

While the defendant is in need of mental health treatment and substance abuse treatment, there is nothing in the record that demonstrates that he cannot receive the necessary treatment while incarcerated. The government requests that the defendant be required to undergo a mental health and drug and alcohol evaluation, and that he be required to comply with any recommended treatment.

4. Need for the Sentence Imposed to Reflect the Seriousness of the Offenses, to Promote Respect for the Law, and to Provide Just Punishment for the Offenses

The offenses of conviction for Vazquez are extremely serious. Despite being on

probation for the very same offense he committed in this case, the defendant chose to deal drugs and possess a firearm. He committed these crimes while on bench warrant status after he absconded from probation. It is clear from his behavior that a significant term of incarceration is required in this case "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." A custodial sentence will ensure that the public is protected from the defendant at least during the time he is incarcerated. It will also provide an opportunity for the defendant to rehabilitate himself.

5. Need to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant

The recommended sentence affords adequate general deterrence to others who would consider committing similar offenses. It will also serve to deter the defendant, as it sends a message that any further criminal acts will continue to result in more severe punishment. 18 U.S.C. § 3553(a)(2).

6. Need to Provide the Defendant with Educational or Vocational Training, Medical Care, or other Correctional Treatment in the Most Effective Manner

It is likely that the defendant could benefit from any additional educational or vocational programs offered by the BOP and the government would encourage him to participate both in custody and eventually while on supervised release. This would aid the defendant in reintegrating into society. To the extent the defendant wishes to pursue those offerings, the recommended sentence will not inhibit those efforts while he is incarcerated or on release.

7. Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records who have been Found Guilty of Similar Conduct

Sentencing consistency is extremely important in the overall administration of justice. Any sentence imposed on the defendant must reflect consideration of the sentences imposed upon similarly situated defendants who brought to the table the same types of sentencing considerations as those presented by him, particularly the recidivist nature of his actions, and such an extensive criminal history. Sentence disparities among such individuals must be avoided.

Here, the government acknowledges that circumstances exist in this case that warrant a sentence below the applicable guideline range.

8. Restitution

Restitution is not an issue in this case.

## VI. CONCLUSION

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition of a custodial sentence below the advisory guideline range.

Respectfully submitted,

Jacqueline C. Romero
United States Attorney

/s Robert E. Eckert
Robert E. Eckert
Assistant United States Attorney

Dated: July 2, 2024

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the government's sentencing memorandum has been served via electronic filing and electronic mail on this date on counsel for the defendant:

Tamika McKoy
tamika@mckoylawfirm.com

/s Robert E. Eckert
Robert E. Eckert
Assistant United States Attorney

Date: July 2, 2024